In the Supreme Court of Georgia

Decided:    June 2, 2014

S14A0504.  MURRAY v. THE STATE.

BENHAM, Justice.

Randy Grier Murray was convicted of malice murder and other offenses arising out of the shooting death of Jerome "Tay" Barnett during a drug transaction, he was sentenced to life without parole pursuant to OCGA § 17-10-7 (b), and he appeals.[1]  For the reasons set forth below, we affirm.

1.  Viewed in the light most favorable to the jury's verdict, the evidence shows that on the date of the shooting, both appellant and the victim were registered as guests at an extended stay hotel in Fulton County.  In its case-in-

[1]  The crimes occurred on February 11, 2007.  On May 11, 2007, a Fulton County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault), felony murder (possession of a firearm by a convicted felon), aggravated assault, possession of a firearm during commission of a felony, and possession of a firearm by a convicted felon.  The two counts relating to possession of a firearm by a convicted felon were bifurcated from the jury trial. Appellant was tried for the remaining counts by a jury October 6-8, 2009, and the jury found him guilty on all counts.  The trial court sentenced appellant to life without parole pursuant to OCGA § 17-10-7 (b) for malice murder.  The two counts relating to possession of a firearm by a convicted felon were dead docketed.  Appellant moved for a new trial on October 13, 2009, which was amended March 30, 2012.  After a hearing, the trial court denied appellant's motion for new trial by order entered November 27, 2012.  Appellant filed a timely notice of appeal, and the case was docketed in this Court to the January 2014 term for a decision to be made on the briefs.

chief, the state presented testimony that, after appellant was arrested, and while being transported to the jail, he made spontaneous statements to the transporting officer that he went to the victim's unit to purchase marijuana, that the dealer-victim "started tripping," and they fought. He further stated to the transporting officer that during the fight he took the victim's gun from him and shot him, and that afterwards he jumped the fence, went into a wooded area, and hid the gun. The state also called as a witness another person who was staying at the residence hotel on the date of these events and who knew appellant from seeing him at the hotel. That witness testified that in the early morning hours of the day the shooting occurred, while he was driving his car, he saw appellant walking down the street, recognized him as someone who lived at the hotel, and picked him up. While in the witness' car, appellant told the witness that the victim had pulled a gun on him and that "he [appellant] did what he had to do." At the conclusion of the state's case, appellant moved for directed verdict on the ground that the evidence established a defense of self-defense which the state had not disproved beyond a reasonable doubt, and the motion was denied. Appellant asserts the trial court erred in denying his motion for directed verdict at the close of the state's case and also by denying his motion for new trial on

2

the same ground.

"[A] person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony." OCGA § 16-3-21 (a). Citing to *Andrews v. State*, 267 Ga. 473 (1) (480 SE2d 29) (1997), appellant asserts that when a defendant presents evidence of justification in using deadly force, the state then bears the burden to disprove the defense beyond a reasonable doubt. According to appellant, sufficient evidence to establish his defense of self-defense was presented in the state's case-in-chief. Thus, appellant asserts, the state in this case was required to disprove self-defense in its case-in-chief and failed to do so. Even assuming the evidence presented by the state was sufficient to establish justification, however, an appellate court, when reviewing a trial court's ruling on a motion for directed verdict in a criminal case, is not confined to a review of the evidence at the close of the state's case. See *Black v. State*, 261 Ga. 791, 796 (10) (410 SE2d 740 (1991). The entire evidence is to be examined, and so long as all the evidence justifies the conviction under the appropriate standard, no error is shown by the

denial of the motion for directed verdict. Id.

Appellant took the stand and testified he was afraid because the victim pointed a gun at him, but also that he was angry because the victim had cursed him. Appellant testified that after the victim cursed at him for not having sufficient funds to make the requested drug buy, the two engaged in a physical altercation and that appellant believed he had to take the victim's gun away from him in order to get out alive. Appellant further testified that after he knocked the gun out of the victim's hands and the gun went off, "I got the gun; and I shot him." The state's theory was that appellant felt embarrassed and disrespected when the victim mocked and cursed appellant for being short of the money to buy drugs and would not extend credit to him. The evidence showed the victim was shot and killed by a .45 caliber Colt or Colt copy. The evidence further showed that a bullet was discharged that went through the ceiling of the apartment below. The bullet was recovered and it was also .45 caliber. The victim, on the other hand, was known to carry a .25 millimeter handgun, and a magazine to such a pistol was found in his room. Further, a neighbor testified that, around the time of the events in question, he heard someone running past his room from the direction of the victim's unit and, between five and ten

4

minutes later, he heard a gunshot. The neighbor peeked out the window and six to eight minutes after the gunshot, he saw appellant walk by, "messing" with a big black handgun, checking the chamber, and, the neighbor testified, appellant had a scowl on his face. Based on the handle and how appellant was checking the chamber, the neighbor thought it might be a .45 caliber semi-automatic, and that it was not a revolver. The neighbor then saw appellant leave the complex through the key-card controlled gate, and surveillance tapes showed appellant leaving through this gate. Appellant, however, stated to the transporting officer that after the shooting he jumped the fence and hid the gun in a wooded area. The police searched but never found the murder weapon. Another witness saw appellant at a poker game the night before the shooting and she testified he was sporting an iron-colored or smoke grey handgun, and while she was not sure of the size of the gun, it was the type of gun that had a clip and was not a revolver.

Pursuant to the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd 2d 560) (1979), we find that the evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt for malice murder. "It follows that the court did not err in denying [appellant's] motion for directed verdict of acquittal made at the conclusion of the State's

case-in-chief . . . ." *Mangum v. State*, 274 Ga. 573, 574 (1) (555 SE2d 451) (2001). The jury was entitled to disbelieve appellant's claim of self-defense. See *Allen v. State*, 290 Ga. 743 (1) (723 SE2d 684) (2012). Likewise, the trial court did not err in denying appellant's motion for new trial on the ground that the state failed to disprove appellant's affirmative defense of self-defense beyond a reasonable doubt.

2. As part of the jury instructions, the trial judge stated: "A crime is no less punishable if committed against a bad person than if it were perpetrated against a good person." Appellant concedes this is a correct statement of the law. He asserts, however, that given this was a killing arising out of a drug deal in which the defense was self-defense, this statement represents an improper comment on the evidence in violation of OCGA § 17-8-57.[2] According to appellant, this statement to the jury improperly implied appellant, as a participant in the drug deal, was also a bad person, and improperly permitted the

---

[2] Pursuant to OCGA § 17-8-57:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

jury to infer that appellant's right to defend himself was somehow reduced under the "bad" circumstances of a drug deal.

We find no violation of OCGA § 17-8-57 in this case. The transcript reflects that the trial court began its instructions by reading the counts of the indictment. It then gave routine instructions on the presumption of innocence, the state's burden of proof, defendant's lack of a burden, reasonable doubt, direct and circumstantial evidence, credibility of witnesses, impeachment, criminal intent, and the state's burden to prove venue. The court then gave the instruction the appellant now challenges: "A crime is no less punishable if committed against a bad person than if it were perpetrated against a good person." Afterwards, the court gave the definitions of the offenses appellant was accused of committing, and it charged on the defense of justification as well as the state's burden to disprove affirmative defenses. In charging on justification and use of force, the court instructed: "The state has the burden of proving beyond a reasonable doubt that the defendant was not justified." When asked, appellant's counsel replied that he had no objections to the instructions. The state requested the instruction that appellant now challenges, and it was a correct statement of law. *Crawley v. State*, 137 Ga. 777 (2) (74 SE2d 537)

(1912) (where evidence of the victim's bad character was presented, this Court found no error in the trial court's charge that "it is the same offense to kill a bad person as it is to kill a good person").

As the trial court properly concluded in its order denying appellant's motion for new trial, the charge did not intimate that a crime had been committed or that appellant was in any way responsible, nor did it negatively reflect upon his self-defense claim. The fact that the trial court used the term "punishable" did not invade the jury's province, as the challenged statement did not imply that appellant should be punished but simply instructed the jury not to let the victim's character influence their deliberations with respect to whether appellant should be punished. Further, the challenged remark was not a comment on the evidence and did not lessen the state's burden to disprove appellant's defense of self-defense, as the trial court found. Consequently, it did not violate OCGA § 17-8-57, as this code section "is only violated when the trial court's instruction assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." (Citations and punctuation omitted.) *Jones v. State*, 277 Ga. 36, 39 (4) (586 SE2d 224) (2003). Finally, the jury was instructed not to construe any comment by the trial court as an expression of

opinion upon the facts or evidence, the credibility of the witnesses, or upon the guilt or innocence of the accused. Considering the charge as a whole, we find no reversible error as a result of the complained-of statement by the trial court.

3.    Appellant asserts he was denied due process by the trial court's allegedly incomplete and erroneous jury instruction on impeachment in that the instruction failed to fully and properly instruct the jury on the various modes, methods, and manners of impeachment. When the trial court read from the written instructions that had been supplied to trial counsel after the jury instruction conference, the court inadvertently omitted a page of the instructions relating to impeachment of witnesses. The oral instructions on impeachment started with:

> If any attempt has been made in this case to impeach any witness by proof of contradictory statement previously made, you must determine from the evidence whether any such statements were made.

The written instructions provided to the jury before they commenced deliberations completed the instruction by including three determinations, not just one, that the jury was required to make in order to find a witness was impeached by a contradictory statement, along with a conclusion about the

9

effect of such a finding, as follows:

> (a) whether any such statements were made,
> (b) whether such statements were contradictory to any statements made on the witness stand, and
> (c) whether such statements were relevant to the witness's testimony and to the case.

> If you find that a witness has been successfully impeached by proof of previous, contradictory statements, you may disregard that testimony, unless it is supported by other creditable testimony. The credit to be given to the balance of the testimony of the witness would be for you to determine.

Once it was brought to the trial court's attention that an incomplete charge on impeachment of witnesses may have been given, appellant's counsel acquiesced in the decision that an oral recharge was unnecessary because the written instructions to be supplied to the jury would be sufficient. In fact, the trial court drew the error to the jury's attention and directed them to the page number of the written instructions on which the complete instructions on impeachment of witnesses could be found. Appellant acknowledges that the written instructions on witness impeachment that were supplied to the jury were proper and complete. Nevertheless, appellant asserts that, because this is a life without parole case, due process and fundamental fairness requires a jury to be properly instructed orally by and from the trial judge with appellant and his counsel

10

present in order to ensure a fair and impartial jury, and also asserts that the jury should not have been required to rely upon the written charge. Despite trial counsel's acquiescence to the solution to the mistakenly incomplete oral instructions, appellant asserts this is an issue for "plain error" analysis and that a new trial is required.

Appellant's due process argument, unsupported by authority, is unpersuasive. Under these facts, the trial court did not err in concluding appellant failed to show plain error in the impeachment charge given and therefore in denying appellant's motion for new trial. Appellant has failed to show plain error under the four-pronged test adopted in *State v. Kelly*, 290 Ga. 29 (1) (718 SE2d 232) (2011), in that appellant has failed to show that "the instruction was erroneous, the error was obvious, the instruction likely affected the outcome of the proceedings, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012). Here, the trial court's oral and written instructions, taken as a whole, adequately informed the jury of the permissible and applicable methods of impeachment. See *Miner v. State*, 268 Ga. 67, 68 (3) (485 SE2d 456) (1997) (trial court's original oral instructions on the state's

burden of proof in general, along with the written recharge on voluntary manslaughter that the state has the burden of proof that the murder is not mitigated by provocation or prejudice, taken as a whole adequately informed the jury of the state's burden of proof). No reversible error is shown.

Judgment affirmed. All the Justices concur.