304 Ga. 543
FINAL COPY

S18A1025. KIDD v. THE STATE.

MELTON, Chief Justice.

Following a December 6-8, 1999 jury trial, Tiwanna Kidd was found guilty of felony murder, malice murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the shooting and death of Tameka Woody.[1] On appeal, Kidd contends that the trial court erred by:

---

[1] On December 15, 1998, Kidd was indicted for malice murder, felony murder predicated on aggravated assault, and possession of a firearm during the commission of a felony. Following a December 6-8, 1999 jury trial, Kidd was found guilty on all counts. On December 8, 1999, the trial court sentenced Kidd to life imprisonment for malice murder and five consecutive years for possession of a firearm during the commission of a felony. The trial court merged the aggravated assault count into the malice murder count for sentencing purposes, and, although the trial court also purported to "merge" the felony murder count into the malice murder count, the felony murder count was actually vacated by operation of law. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On January 11, 2000, with counsel, Kidd filed an untimely motion for new trial. On March 29, 2009, Kidd filed a pro se motion for an out-of-time appeal. The motion for an out-of-time appeal was denied on October 13, 2011, and Kidd filed another motion for an out-of-time appeal, this time with appointed counsel, on October 18, 2012. The motion was granted by the trial court on January 8, 2013. On February 4, 2013, Kidd filed a motion for

(1) overruling her objection during the State's opening argument; (2) denying her motion to suppress her in-custody statement to police; and (3) denying her objection to the State's requested jury charge on "revenge for a prior wrong." For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on June 23, 1998, Tameka Woody and her friend, Alexandria Hunnicut, were at Hunnicut's apartment in the McDaniel Glenn housing project. Woody and Hunnicut left the apartment later in the evening to walk to a nearby Chevron gas station, and they encountered Kidd and her boyfriend, Kevin Green. Kidd had recently moved into McDaniel Glenn, while Green was a longtime resident of the area and more familiar with many of the residents. When Hunnicut waved to Green, and Woody said hello to him, Kidd said to Woody, "Don't be

new trial, which she amended on March 11, 2016. Following an April 11, 2016 hearing, the trial court denied Kidd's motion as amended on May 10, 2016. On May 18, 2016, Kidd filed a timely notice of appeal, which she amended on August 15, 2016. Following the filing of an affidavit of indigency, Kidd's timely appeal was docketed in this Court for the August 2018 term and submitted for decision on the briefs. See Owens v. State, 303 Ga. 254, 258 (811 SE2d 420) (2018) (reminding the bench and bar that "[w]e do not condone . . . inordinate delay[s] in . . . motion for new trial proceeding[s]," as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial") (Citation and punctuation omitted).

speaking to my man." Woody responded, "Don't nobody want ugly a** Kevin Green," and Kidd then told Woody, "When you come back down there I'm going to bust your a**. I'm going to bust your a** when you come back down there."

After Woody and Hunnicut returned to Hunnicut's apartment, Woody told Hunnicut that she was going to find Kidd and tell her she did not want to fight, because, "I have kids and we don't need to go to jail for being out here fighting; and all us got to stay in the neighborhood together." When Woody and Hunnicut left the apartment again, they were joined by Antonio Woods. As the three were walking toward a pay phone in the parking lot, Kidd angrily approached Woody with a gun in her hand, and said, "I told you I'm going to bust you. I told you I was going to bust you." She then placed the gun between Woody's eyes and shot her. Emergency personnel transported Woody to Grady Hospital where she died. A number of witnesses reported that Woody did not brandish a weapon or use one against Kidd at any point during the altercation. Immediately after Woody was shot, Kidd was seen walking to Green's apartment where she was later arrested. Kidd admitted to police that she shot Woody, believing that Woody wanted to fight her, and she claimed at trial that she shot Woody by

3

accident when her gun "just went off."[2]

The evidence was sufficient to enable a rational trier of fact to find Kidd guilty of the crimes for which she was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was free to reject Kidd's claims that the shooting had occurred by accident. See, e.g., Harris v. State, 299 Ga. 642 (1) (791 SE2d 32) (2016).

2. Kidd contends that the trial court committed reversible error by overruling her objection to a remark made by the State during its opening statement regarding a defense theory that could have been raised at trial. We disagree.

The record reveals that the State made the following remark during its opening statement:

> STATE: I anticipate that the defense will be raising many defenses. You all probably have that idea during voir dire. First one would be accident.

Defense counsel objected to the remark about "accident" being a potential

---

[2] Although Kidd also testified that she was defending herself against an attack by a knife-wielding Woody, her counsel withdrew a requested charge on justification to focus on accident as the theory of defense.

defense at trial because no evidence had been presented on that issue. Although we have said that a comment during opening statement which forecasts evidence to be presented at trial by the defendant is improper (see Parker v. State, 277 Ga. 439, 441 (2) (588 SE2d 683) (2003)), the State here referenced an anticipated defense theory without predicting what evidence might be presented. In any event, even if the State's comment could be construed as improper, it was not harmful because defense counsel did actually advance the anticipated theory through Kidd's own testimony at trial, and the trial court instructed the jury that counsel's arguments are not evidence. Under the circumstances presented in this case, it is "highly probable that the prosecutor's comments did not contribute to the judgment." Parker, supra, 277 Ga. at 442. Thus, we find no reversible error.

3. Kidd argues that the trial court erred in denying her motion to suppress her statement to police made during a custodial interrogation. Specifically, Kidd claims that her June 23, 1998 confession was involuntary due to impermissible force and coercion exerted by law enforcement, and that such coercion was evidenced by the fact that she never received a written waiver form to formally waive her Miranda rights.

5

> In ruling on the admissibility of an in-custody statement, the trial court must look to the totality of the circumstances to decide whether the statement was made freely and voluntarily. The trial court's factual findings and credibility determinations regarding the admissibility of in-custody statements will be upheld on appeal unless clearly erroneous. Generally, if there is evidence supporting the trial court's decision to admit statements, it will be upheld on appeal.

(Citations omitted.) Milinavicius v. State, 290 Ga. 374, 375 (2) (721 SE2d 843) (2012). Here, the lead investigator, Sergeant R.E. Chambers, testified that he orally advised Kidd of her Miranda rights, that she responded that she did not want an attorney, and that she proceeded to talk about what happened that night, voluntarily. In this regard, a written waiver is not necessary where a suspect is orally advised of his or her rights and subsequently waives those rights through his or her responses. See Spain v. State, 243 Ga. 15, 16 (1) (252 SE2d 436) (1979) ("[T]here is no constitutional requirement that waiver of constitutional rights be in writing," and in the absence of writing, the court may still find from the totality of the evidence that the state carried its burden of showing waiver). See also Humphreys v. State, 287 Ga. 63, 74 (6) (694 SE2d 316) (2010) (a written or oral statement of a waiver of rights is "usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to

establish waiver"). Kidd also said she understood the effect of her statement. Chambers further testified that he did not make any verbal threats to Kidd that would have induced a confession. In fact, "[t]he only evidence of intimidating behavior on the part of the officers is [Kidd's] testimony to that effect, and the trial court's decision against [her] position is the result of a credibility determination which is not clearly erroneous." Raulerson v. State, 268 Ga. 623, 627 (491 SE2d 791) (1997). See also Cheley v. State, 299 Ga. 88, 90 (2) (786 SE2d 642) (2016) ("[W]e must accept the factual findings and credibility determinations of the trial court unless clearly erroneous.") (Citation omitted). We find no error in the trial court's denial of Kidd's motion to suppress.

4. Kidd contends that the trial court erred by giving a jury instruction on the concept of "revenge for a prior wrong." However, the record reveals that, although the parties discussed such a charge during the charge conference, the trial court never actually gave any charge on revenge for a prior wrong to the jury. Because Kidd's claim is belied by the record, it is without merit.

Judgment affirmed. All the Justices concur.

Decided October 9, 2018.

Murder. Fulton Superior Court. Before Judge Glanville.

Kenneth W. Sheppard, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.