306 Ga. 434
FINAL COPY

S19A0669. CAIN v. THE STATE.

BETHEL, Justice.

An Irwin County jury found appellant Terry Joe Cain guilty of malice murder and other crimes in connection with the shooting death of Matthew Mobley and the assault of Gregory Johnson.[1] He appeals, arguing that the trial court erred in denying his motion for directed verdict, finding that his pretrial statement to law enforcement was voluntarily given, and denying his motion for

---

[1] On February 14, 2011, an Irwin County grand jury indicted Cain for the December 20, 2010, malice murder of Mobley, felony murder predicated on aggravated assault with a deadly weapon of Mobley, aggravated assault with a deadly weapon of Mobley, and aggravated assault with a deadly weapon of Johnson. After a trial held from April 30 to May 2, 2013, a jury found Cain guilty of all charges. The trial court sentenced Cain to life with parole for malice murder and life with parole for felony murder. The trial court combined the aggravated assault counts and sentenced Cain to 20 years to be served concurrently. However, the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). As discussed in Division 4 below, the trial court's apparent combining of Cain's aggravated assault counts for sentencing was error.

Cain filed a motion for new trial on July 10, 2013, and he amended that motion on July 16, 2013. Cain filed a second amended motion for new trial through new counsel on June 5, 2018. The trial court denied the motion (as amended) on November 26, 2018. Cain filed a notice of appeal to this Court on December 20, 2018, and this case was docketed in this Court to the April 2019 term and submitted for a decision on the briefs.

mistrial. Upon consideration, we conclude that these claims are meritless. However, because the trial court erred in sentencing Cain, we remand this case for resentencing.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial showed the following. Jennifer Johnson, Cain's sister, was married to but estranged from Gregory Johnson, with whom she had two children. Shortly before Thanksgiving 2010, Jennifer dropped the couple's daughter off at Gregory's house. Gregory noticed the child had problems sitting down, and, upon inspection, he discovered she had severe diaper rash and "a hole on her butt cheek the size of a nickel." Gregory reported Jennifer to DFCS, resulting in animosity between the couple and between Gregory and Cain.

On December 20, 2010, Cain went to the house at which Gregory was staying. Gregory was sitting on the porch with his brothers, including Mobley. When Cain drove up to the house in his white Pontiac LeMans, he exited his car and asked Gregory, "You

going to give me my one?"[2] Cain and Gregory then engaged in a physical altercation during which Gregory struck Cain twice on the side of his face. After being hit, Cain got into his car and left the scene.

Cain then traveled to his home and retrieved his father's pistol. Cain also called his friend, Rondell Montgomery,[3] and asked Montgomery to accompany him back to Gregory's house "to do a one-on-one fight with a dude to be sure nobody jumped in." Cain then returned to Gregory's home in the white Pontiac with Montgomery as his passenger; his mother, Alicia Harper, and his sister Jennifer followed in Harper's blue Buick.[4] When Harper's car reached Gregory's house, Jennifer, riding in the passenger seat, leaned out the window and began arguing with Gregory, who followed the car on foot as it drove past. As Gregory was still walking down the street

---

[2] Gregory testified that this meant that Cain was asking for a fight.

[3] Montgomery was indicted for malice murder separately from Cain. In exchange for his testimony at trial, Montgomery was granted use and derivative use immunity.

[4] Jennifer's children were also in the Buick.

near his house, Cain pulled up in his car, stuck a pistol out the window, and shot once at Gregory.[5] Although he was not shot, Gregory, believing he had been hit, slumped over in the road. Gregory was not armed.

Gregory's brothers remained on the front porch of his house during this time. When they heard a gunshot, Mobley and a third brother, Eddie Stanley, got in Mobley's truck and began driving. Mobley stopped at a stop sign close to the house, and, when he saw Harper's car, he got out of his truck and began chasing Harper's car on foot. Cain then drove up in his car, and Mobley, seeing Cain, turned around and ran toward Cain's window. Cain fired one shot at Mobley, hitting him. Mobley was unarmed.

Mobley was taken to the hospital with a gunshot wound to his right shoulder area, which ultimately proved fatal. The medical examiner testified that the bullet entered Mobley's right arm and

---

[5] Cain testified in his own defense and claimed this shot was only a warning shot. However, Montgomery, the passenger in Cain's car, testified that this was not a warning shot and that Cain pointed the gun at and shot at Gregory.

traveled through his chest lacerating both lungs. The medical examiner recovered the bullet from the muscle between Mobley's ribs. The medical examiner was unable to determine the range of fire due to the lack of stippling and soot.

At trial, Doug Douglas, a detective with the Ocilla Police Department, testified that he recovered a .380 semi-automatic handgun that was buried in a flower pot at Harper's house.[6] A firearms examiner testified that the evidence was consistent with the bullet recovered from Mobley's torso having been fired from the gun recovered from Harper's house.

Cain testified in his own defense at trial, contending that he acted in defense of himself and in defense of his mother, sister, and his sister's children. According to Cain, Gregory began threatening Cain and his sister Jennifer with physical harm in the months leading up to the incident.[7] Cain testified that, earlier on the day of

---

[6] Harper was arrested and charged with tampering with evidence in connection with the recovery of this firearm. In exchange for her testimony at trial, Harper was granted immunity.

[7] Cain, Harper, and Jennifer testified at trial that Gregory made these

5

the shooting, Gregory and Mobley forced Cain's car off the road and then approached Cain's car and began punching him through his car window. According to Cain, this incident caused him to fear for his life, so he went to his parents' house and took his father's handgun. Cain claimed that he drove to Gregory's house when Jennifer called him screaming that Gregory was chasing her, Harper, and Jennifer's children. Cain also claimed that, when he shot Mobley, Mobley had his left fist drawn back ready to hit Cain.

At the conclusion of the State's case, Cain moved for a directed verdict on the ground that the State had failed to disprove his claim of self-defense. The trial court denied this motion, which Cain asserts was error. According to Cain, sufficient evidence to establish his defense of self-defense was presented during the State's case-in-chief. Consequently, Cain argues, the State bore the burden of disproving, before the close of its case, the absence of self-defense,

---

threats on voicemails left on Cain's and Jennifer's phones. However, the voicemails could not be recovered from the phones for trial. A GBI agent testified that Jennifer played the voicemails for him but that he did not hear any threats made on the voicemails.

6

which the State failed to do.

We addressed and rejected this same argument in *Murray v. State*, 295 Ga. 289, 290-291 (1) (759 SE2d 525) (2014). There, we explained that

> an appellate court, when reviewing a trial court's ruling on a motion for directed verdict in a criminal case, is not confined to a review of the evidence at the close of the [S]tate's case. The entire evidence is to be examined, and so long as all the evidence justifies the conviction under the appropriate standard, no error is shown by the denial of the motion for directed verdict.

(Citation omitted.) Id.

Viewing the evidence recounted above in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to authorize a rational jury to find Cain guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia,* 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). And because decisions of witness credibility and questions of justification are reserved for the jury, the jury was free to reject Cain's claim that he acted in self-defense or defense of others. See *Roper v. State,* 281 Ga. 878, 880 (1) (644 SE2d 120) (2007).

7

Accordingly, the trial court did not err in denying Cain's motion for directed verdict. See *Smith v. State*, 304 Ga. 752, 754 (822 SE2d 220) (2018) ("The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction." (citation and punctuation omitted)).

2. Turning to Cain's second enumeration, he contends that the trial court erred in admitting his custodial statement made hours after the crimes occurred. Cain argues that the statement was not voluntary because he asked for an attorney at the beginning of the interview and because law enforcement induced him to make the statement by promising to help him obtain a manslaughter charge, rather than a murder charge, and by threatening to jail his mother and sister. For the following reasons, we conclude that this enumeration lacks merit.

Cain filed a pre-trial motion to suppress his signed, written statement as well as testimony regarding the statement. Before the

start of trial, the trial court held a *Jackson-Denno*[8] hearing on Cain's motion at which the two officers who interviewed him, GBI Agent Ben Collins and Detective Douglas, testified. Cain was under arrest at the time of the interview, and the State presented evidence that Cain executed a written waiver of his *Miranda*[9] rights in the presence of both Agent Collins and Detective Douglas, indicating that he understood his rights and that he had not been threatened or promised anything in exchange for speaking with law enforcement. Cain's interrogation was not recorded, but he reduced his statement to a one-page writing, which he both reviewed and signed and which was likewise signed by Agent Collins. Agent Collins and Detective Douglas both testified that they were present for the entirety of Cain's interrogation.

Cain testified on his own behalf at the *Jackson-Denno* hearing. According to Cain, Agent Collins took out a recorder at the outset of the interview, but both Agent Collins and Detective Douglas denied

---

[8] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).
[9] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

the interview was recorded. Cain claimed that he initially told Agent Collins he wanted an attorney but decided to speak with investigators when Agent Collins indicated that he could arrange for Cain only to be charged with manslaughter. Both Detective Douglas and Agent Collins denied that such an exchange transpired. Cain further claimed that Agent Collins threatened to jail Cain's mother, but, again, Agent Collins denied that this exchange occurred. Detective Douglas had no recollection as to whether Cain's family was discussed. After argument by the parties, the trial court denied Cain's motion to suppress, finding that, based on a preponderance of the evidence, his statement was given voluntarily.

> In ruling on the admissibility of an in-custody statement, the trial court must look to the totality of the circumstances to decide whether the statement was made freely and voluntarily. The trial court's factual findings and credibility determinations regarding the admissibility of in-custody statements will be upheld on appeal unless clearly erroneous. Generally, if there is evidence supporting the trial court's decision to admit statements, it will be upheld on appeal.

(Citation and punctuation omitted.) *Kidd v. State*, 304 Ga. 543, 545-546 (3) (820 SE2d 46) (2018). Here, although the trial court did not

make any explicit factual findings or credibility determinations on the record, by ruling that the statement was voluntary, the court nonetheless credited the testimony of the officers over that of Cain and made an implicit finding as to the voluntariness of Cain's statement. Cain has not shown that the trial court's finding was clearly erroneous. See *Moody v. State*, 277 Ga. 676, 679 (3) (594 SE2d 350) (2004) (evidence that defendant received notice of and waived his *Miranda* rights and testimony of interrogating law enforcement officers that contradicted defendant's claim that his statement was induced by threat "amply support[ed]" trial court's finding that defendant's statement was voluntary).

3. Cain claims that, in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), the State failed to timely produce exculpatory information that would have supported his defense of self-defense and asserts that the trial court erred in denying his motion for mistrial predicated on that alleged failure.

During trial, Cain moved for a mistrial based on the State's failure to timely produce two cell phones, the voicemail boxes of

11

which, Cain contends, contained voicemails from Gregory in which he threatened Cain and his sister. On appeal, Cain insists that, as a result of the State's failure to produce the cell phones, the voicemails were lost. Cain's sister gave the cell phones to law enforcement on the day of the crimes, and the State did not return the cell phones to Cain until the day before trial. According to Cain, law enforcement made no efforts to retrieve the voicemails from the phone or to secure the phones so that the voicemails could be retrieved later.

At trial, a GBI agent testified that Jennifer played the voicemails from one phone for him when he interviewed her, but they did not contain any threats as alleged by Cain and his family. Jennifer, on the other hand, testified that she did not play any messages for the agent. She also testified that she attempted but was unable to retrieve the voicemails from her service provider because she had changed her phone number and the messages were automatically deleted when the number was changed. Defense counsel's assistant testified to her unsuccessful attempts to retrieve

12

the voicemails the day before trial commenced. The trial court delayed ruling on Cain's motion until after Cain presented his defense, which included testimony from both Jennifer and his mother, as well as from Cain himself, regarding the contents of the voicemails. The parties also entered into a stipulation that "No voice mails if they exist may be retrieved from the phones through no fault of the parties."

After the defense rested, the trial court denied the motion for mistrial, finding that Cain did not show a reasonable probability of a different outcome had the voicemails been disclosed, given that Cain and Jennifer both testified to the jury regarding the contents of the threatening voicemails.

To prevail on a *Brady* claim, Cain must establish the following four factors:

> (1) The State, including any part of the prosecution team, possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed to the defense.

13

(Citation and punctuation omitted.) *McCray v. State*, 301 Ga. 241, 246 (2) (c) (799 SE2d 206) (2017). Information of which a defendant is "already aware" generally does not constitute *Brady* material. See *Propst v. State*, 299 Ga. 557, 567 (5) (788 SE2d 484) (2016), overruled on other grounds by *Worthen v. State*, 304 Ga. 862 (823 SE2d 291) (2019). As one federal circuit court has noted:

> *Brady* is concerned only with cases in which the government possesses information which the defendant does not. . . . [T]here is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source.

(Citations and punctuation omitted.) *Carter v. Bell*, 218 F3d 581, 601 (IV) (6th Cir. 2000).

Here, Cain could have obtained the voicemails through the exercise of reasonable diligence. Cain was aware of the existence and contents of the voicemails, and, even though he no longer had access to the cell phones, the record established that the voicemails were available to him from other sources. Based on testimony adduced during the hearing on Cain's motion for mistrial, had Cain acted in

14

a timely manner, he would have been able to obtain the voicemails directly from the service providers or by simply dialing into the cell phones' voicemail boxes remotely. Physical possession of the cell phones was not necessary to retrieve the voicemails by either of those methods.

Moreover, Cain has demonstrated neither that the prosecution suppressed the recordings nor that, had the cell phones been turned over to the defense and the voicemails played for the jury, there is a reasonable probability that the outcome of the trial would have been different. Cain agreed to a stipulation that the State was not at fault in regard to Cain's inability to retrieve the voicemail messages. What is more, Cain and Jennifer testified to the contents of the voicemails, and the jury was free to credit or to reject their assertions that they had been threatened. See *Roper*, 281 Ga. at 880 (1). Given these circumstances, his *Brady* claim fails. As a result, the trial court did not abuse its discretion in denying Cain's motion for mistrial. See *Coleman v. State*, 301 Ga. 720, 722 (3) (804 SE2d 24) (2017) ("Whether to declare a mistrial is a question committed

to the discretion of the trial judge, and the denial of a mistrial is reversible error only if it appears that a mistrial was essential to preserve the defendant's right to a fair trial." (citation and punctuation omitted)).

4. Finally, although not enumerated as error by Cain, our review of the record shows that the trial court erred in sentencing Cain. Cain was convicted of both aggravated assault of Mobley and aggravated assault of Gregory, and the trial court seemingly combined the aggravated assault convictions and sentenced Cain to 20 years for the aggregated convictions. But the conviction for aggravated assault of Mobley "merges as a matter of fact into the malice murder conviction." *Lucky v. State*, 286 Ga. 478, 481 (2) (689 SE2d 825) (2010). Consequently, Cain's conviction for the aggravated assault of Mobley and the 20-year sentence for the combined aggravated assaults must be vacated, and the case is remanded for resentencing as to the conviction for the aggravated assault of Gregory only.

*Judgment affirmed in part and vacated in part, and case*

16

*remanded for resentencing. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Irwin Superior Court. Before Judge Cross.
*John R. Mobley II*, for appellant.
*C. Paul Bowden, District Attorney, Jason M. Rea, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.