311 Ga. 891
FINAL COPY

S21A0289.  HUFFMAN v. THE STATE.

ELLINGTON, Justice.

A Forsyth County jury found Frank Huffman guilty of felony murder in connection with the shooting death of James Tanner Conrad ("Tanner").[1] On appeal, Huffman claims that the trial court erred in denying his motion to suppress his statements to law enforcement officers by finding that he freely and voluntarily waived his *Miranda*[2] rights. We affirm for the reasons set forth below.

The evidence at trial showed that Huffman lived in his Forsyth

---

[1] On July 14, 2015, a Forsyth County grand jury indicted Huffman for malice murder (Count 1), felony murder (Count 2), and aggravated assault (Count 3). At a jury trial held in September 2016, Huffman was found guilty of Counts 2 and 3 and not guilty of Count 1. The trial court sentenced Huffman to serve life in prison for felony murder (Count 2). Count 3 merged with Count 2. Huffman filed a motion for new trial on October 19, 2016, which he amended on February 6, 2020. The trial court denied the motion for new trial as amended on April 14, 2020. Huffman filed a timely notice of appeal, and the case was docketed in this Court to the term beginning in December 2020 and submitted for a decision on the briefs.

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

County home with his girlfriend, Sherry Conrad, and her adult son, Tanner. On January 7, 2015, Tanner, Conrad, and Huffman drank liquor together. Huffman became agitated, Conrad testified, when Tanner used "cussing" language in front of her. After Tanner went to bed, Conrad and Huffman sat in their recliners in the living room. Conrad next recalled waking up and hearing Tanner calling her name.

Conrad testified that after waking up she saw blood on the floor and heard Huffman say, "look at my nose, he broke my nose." Tanner started cleaning up the blood. Meanwhile, Huffman went to the master bedroom and returned with a gun. Conrad heard a loud sound and saw smoke, and she turned and saw that Tanner had been shot in his back left shoulder. Conrad took the gun from Huffman, called 911, and reported that Huffman had shot Tanner.

Deputies with the Forsyth County Sheriff's Office responded to the scene, where they found Huffman sitting in a chair with a wound on his face. After summoning an ambulance for Tanner, deputies handcuffed Huffman and took him to a police station for

questioning. Tanner died shortly after reaching the hospital. In a video-recorded interview, Huffman told the interviewing detective that he shot Tanner.

Huffman filed a pretrial motion to suppress the statements he made during the custodial interview on the grounds that the statements were not freely and voluntarily given, and that he did not understand or was not informed of his rights under *Miranda.* The trial court held a pretrial *Jackson-Denno*[3] hearing to consider Huffman's motion to suppress. In pertinent part, the detective who questioned Huffman testified at the hearing as follows. He advised Huffman of his *Miranda* rights by reading those rights to him from a form. Another officer brought a cup of coffee into the room while the detective was reading the *Miranda* rights to Huffman, and the detective told Huffman that he had a right to drink coffee. The detective did not have Huffman sign the form because "it was on video." The detective described Huffman as having "looked rough," with a crooked nose and a bloody shirt and pants, consistent with

---

[3] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

having been in a fight. The detective did not ask Huffman if he needed medical attention, nor did he recall whether any officers assisting him asked Huffman if he needed medical attention. Huffman told the detective that he had been drinking, and the detective discerned that Huffman's speech was slurred, he smelled strongly of alcohol, and he "appeared impaired." However, Huffman appeared to understand why he was there, understood the questions asked of him, and answered appropriately as if he understood what was asked. During the course of the interview, Huffman did not invoke his right to remain silent or his right to an attorney. Huffman did not testify at the *Jackson-Denno* hearing.

In addition to the detective's testimony, the trial court reviewed the video recording of Huffman's interview. The trial court entered a written order denying the motion to suppress. In that order, the trial court noted that the video showed that Huffman was "slightly bloody about his head, [had] blood on his shirt, and . . . admitted to drinking prior in the evening." The trial court found that the detective gave Huffman a cup of coffee when he read Huffman

the *Miranda* rights, adding that Huffman had "the right to drink coffee." The court assessed that "[t]hroughout the course of the interview, [Huffman] coherently answered questions regarding the events of the evening and described his relationship with the victim." The court found that Huffman was properly advised of his *Miranda* rights, and that he understood those rights and did not invoke them. The court also found that Huffman gave his statements freely and voluntarily.

In its order denying Huffman's motion for new trial, the trial court rejected Huffman's argument that he was not adequately advised of his *Miranda* rights and that the court therefore erred in denying his motion to suppress. The court affirmed that upon "considering the totality of the circumstances, the State met its burden of showing by a preponderance of the evidence that [Huffman's] statements were freely and voluntarily given after a knowing and voluntary waiver of his *Miranda* rights."

On appeal, Huffman claims that the trial court erred in denying his motion to suppress by finding that he freely and

voluntarily waived his *Miranda* rights.[4] More specifically, Huffman claims that the trial court did not apply an "adequate analysis of the totality of circumstances" in determining the admissibility of his statements. As to those circumstances, Huffman argues that the interviewing detective did not obtain a signed *Miranda* waiver form and failed to ask him if he understood those rights or consented to speaking with the detective. Huffman argues that the detective was aware that he had been drinking and smelled of alcohol, and that he was impaired and slurred his speech. The detective also knew, Huffman asserts, that his nose was crooked and there was blood on his pants and shirt, but did not ask him if he needed medical attention. Huffman maintains that the detective "devalued" the importance of informing him of his *Miranda* rights when he said "you have the right to drink coffee" in the midst of reciting the *Miranda* rights. Huffman also asserts that he was not familiar with

---

[4] Huffman does not challenge the admission of his statement on the ground that it was involuntary under the more general due process standard, and so we do not reach that issue. See *Dozier v. State*, 306 Ga. 29, 36 (4) (c) (829 SE2d 131) (2019).

the criminal process.

"To use a defendant's custodial statements in its case-in-chief, the State must show that the defendant was advised of his *Miranda* rights and that he voluntarily, knowingly, and intelligently waived them." *Hinkson v. State*, 310 Ga. 388, 400 (5) (b) (850 SE2d 41) (2020) (citation and punctuation omitted). A trial court, in assessing whether a defendant's waiver of *Miranda* rights is voluntary, knowing, and intelligent, "must consider the totality of the circumstances to determine whether the defendant's waiver was free of intimidation and coercion and whether the waiver was made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them." *Wells v. State*, 307 Ga. 773, 776 (2) (838 SE2d 242) (2020) (citation and punctuation omitted). An appellate court generally reviews a trial court's factual findings and determinations of credibility for clear error; however, "where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." Id. (citation and punctuation omitted).

The interview video shows that, before reading the advisory of the four rights on the *Miranda* form, the detective caught Huffman's attention by picking up the form and saying, "I'm going to go ahead and do this real quick. Then we'll talk." In response, Huffman leaned in toward the detective and watched the detective's face attentively while he read from the form. Huffman looked away from the detective briefly when the other officer entered the interview room with the coffee Huffman had requested and the detective said he had a right to drink coffee. Once the officer set the coffee on the table, Huffman again leaned in toward the detective and watched the detective's face while he completed reading the form. Huffman did not express any confusion, verbally or in his facial expression, and did not ask for any repetition or clarification of what the detective had just advised him. The detective initiated the interrogation by asking, "That being said, what happened to your nose? Is it broken, or is it normally that way?" Huffman did not invoke his right to silence or ask for an attorney, and he expressed no hesitation in responding to the detective with a narrative about the day's events.

Huffman need not have had experience with the justice system to understand what was said during the reading of his *Miranda* rights. "While familiarity with the criminal justice system, and thus with the *Miranda* warnings, may be one factor to consider in determining whether a defendant has knowingly and intelligently waived his rights, such a determination depends on the totality of the circumstances." *Clay v. State*, 290 Ga. 822, 826 (1) (A) (2) (725 SE2d 260) (2012) (citation omitted). Here, the detective's reading of the *Miranda* warnings was not so rushed as to be unintelligible absent familiarity with *Miranda*. Cf. id. at 825 (1) (A) (2) (evidence supported trial court's finding that *Miranda* warnings were read in such a "super-speed" manner that they were likely not intelligible without prior familiarity with *Miranda*). Although the detective told Huffman he had a "right" to drink coffee, he did so after Huffman had asked for coffee and while another officer was bringing the beverage, and so the detective's comment was specific to those circumstances and could not be reasonably construed as more than a poor attempt at humor. But even taken literally, the detective's

9

comment was not inconsistent with Huffman's rights under *Miranda*. Cf. *Williamson v. State*, 305 Ga. 889, 893-894 (2) (827 SE2d 857) (2019) ("A statement by an interrogating agent that contradicts the *Miranda* warnings is a circumstance that can indicate a suspect did not knowingly and intelligently waive his rights." (citation omitted)).

Huffman had been drinking alcohol earlier in the evening, and there was blood along one side of his nose, which was visibly wounded, as well as blood on his shirt and pants. However, the detective testified at the *Jackson-Denno* hearing and at trial[5] that Huffman understood why he was there, appeared to understand the questions that were asked, and answered them appropriately. Our review of the video recording of the interview does not show otherwise. Thus, notwithstanding that Huffman was impaired to some degree, "the [detective's] testimony and the recorded interview

---

[5] An appellate court may consider all the evidence of record, and is not limited to the evidence adduced at a *Jackson-Denno* hearing, in determining the admissibility of a confession. See *Butler v. State*, 292 Ga. 400, 404 (2) n.7 (738 SE2d 74) (2013).

indicate that . . . [Huffman's] mind was nevertheless clear enough to make a knowing and voluntary waiver of his rights and to speak to the [detective] without an attorney." *Rowland v. State*, 306 Ga. 59, 64 (2) (829 SE2d 81) (2019).

Huffman did not sign a written waiver of his rights, but "a written waiver is not necessary where a suspect is orally advised of his or her rights and subsequently waives those rights through his or her responses." *Kidd v. State*, 304 Ga. 543, 546 (3) (820 SE2d 46) (2018) (citations omitted). Nor did the detective ask for a verbal waiver of Huffman's *Miranda* rights or a verbal acknowledgment that Huffman understood those rights. However, the trial court could conclude from the detective's testimony and its own assessment of the interview recording — which accords with ours — that Huffman understood his *Miranda* rights. And Huffman waived his rights under *Miranda* when he understood those rights and then freely made his statements without invoking his right to remain silent and without requesting an attorney. See *Berghuis v. Thompkins*, 560 U. S. 370, 388-389 (III) (D) (130 SCt 2250, 176 LE2d

1098) (2010) ("[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police.").[6] The trial court's decision to admit Huffman's statements was not clearly erroneous.

*Judgment affirmed. All the Justices concur.*

---

[6] See also *North Carolina v. Butler*, 441 U. S. 369, 373 (99 SCt 1755, 60 LE2d 286) (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."); *Harris v. State*, 274 Ga. 422, 424 (3) (554 SE2d 458) (2001) ("Once *Miranda* warnings are given and a person in custody gives a statement to police without invoking his right to remain silent and without requesting an attorney, he has in effect waived his rights." (citation and punctuation omitted)); *United States v. Boon San Chong*, 829 F2d 1572, 1574 (II) (11th Cir. 1987) ("In the absence of an express waiver, a waiver of [*Miranda*] rights can be implied from the actions and words of the person being questioned. For example, if after being advised of his rights an individual responds willingly to questions without requesting an attorney, waiver may be implied." (citation omitted)).

Decided June 21, 2021.

Murder. Forsyth Superior Court. Before Judge Smith.

*Debra K. Jefferson*, for appellant.

*Penny A. Penn, District Attorney, Jennifer L. Scalia, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.