**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: June 11, 2024

S24A0104. THE STATE v. LOPEZ-CARDONA et al.

WARREN, Justice.

Saturnino Andre Lopez-Cardona, Wilmer Mendez, and Gerson Suruy were charged with crimes related to the stabbing death of Lucas Andres Cruz-Guzman. They each filed pretrial motions to suppress statements that they made during separate interviews with the same police officer. The trial court issued orders granting each of their respective motions, concluding that the defendants did not voluntarily, knowingly, and intelligently waive their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), before they made the statements. The State now appeals, contending that the trial court's conclusion with respect to Lopez-Cardona's and Mendez's statements was incorrect and that we should therefore reverse those orders. The State concedes,

however, that the trial court properly suppressed Suruy's statement and that we should thus affirm that order.

As explained below, the trial court made express findings as to disputed questions of material fact in this case, but because those findings are not sufficiently detailed to permit us to meaningfully review its rulings suppressing Lopez-Cardona's and Mendez's statements, we vacate the orders as to those two defendants and remand the case to the trial court with the direction that the court make further, specific findings. And as to Suruy, we defer to the State's discretion to not challenge the order suppressing his statement, accept the State's concession, and affirm that order.

1. For purposes of this appeal, we will recount the undisputed evidence presented at the hearing on the motions to suppress and also note the existence and nature of disputed evidence pertinent to the trial court's express findings regarding Lopez-Cardona and Mendez and to the additional findings that may be required on

remand.[1]  In June 2021, Lopez-Cardona and Mendez were indicted for malice murder, felony murder, and aggravated assault in connection with Cruz-Guzman's death.  They each filed pretrial motions to suppress statements that they separately made during interviews with a Gwinnett County police officer while they were in custody at police headquarters.

At a hearing on the motions, the officer testified that his primary language is Spanish and that he interviewed Lopez-Cardona and Mendez separately and conducted the interviews in Spanish, their primary language.  The prosecutor tendered into evidence video recordings of the interviews, which he played for the

---

[1] We may "take notice of the undisputed facts" in this case, "even if the trial court did not."  *Hughes v. State*, 296 Ga. 744, 746 n.4 (770 SE2d 636) (2015).  As to the material facts that are disputed, we note that appellate courts generally must "limit" their "consideration of the disputed facts to those expressly found by the trial court," as discussed more below. Id. at 746.  But because here, the trial court made limited findings that preclude meaningful appellate review, such that we must remand the case, we recount the disputed facts necessary to explain the basis for remand and to clarify the additional findings that the trial court must make.

In addition, we note that because we accept the State's decision to not challenge the trial court's order suppressing Suruy's statement, we need not recount the facts of Suruy's case or examine whether the court erred by concluding that he did not voluntarily, knowingly, and intelligently waive his rights.

3

trial court, and transcripts (in Spanish and translated into English) of the recordings.[2] The video recordings and transcripts show that as to each defendant, the officer read in Spanish the rights under *Miranda,*[3] and the officer testified that he read from a "Spanish Advisement of Rights" form that the Gwinnett County Police Department typically used. The English translations of the transcripts of the recordings show that the officer told Lopez-Cardona and Mendez that they had the right to remain silent; anything they said could "be used against [them] before a court of law"; they had a right to an attorney during questioning; if they "want[ed] an attorney but [could ]not afford one," an attorney would be appointed; and they could "exercise" those rights at any time.[4]

---

[2] We note that there is some dispute about what the transcripts showed, as discussed further below.

[3] See *Miranda v. Arizona,* 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[4] The phrases quoted above are what is shown in the English transcripts of the defendants' interviews. As we will explain below, however, a Spanish-speaking interpreter and translator testified that some of the Spanish words that the officer used in explaining the defendants' rights were inaccurate, and thus translated into English differently than what is shown in the transcripts.

4

The video recordings of the interviews show that Lopez-Cardona was mostly still while the officer read the rights, whereas Mendez nodded after the officer recited each right. At the end of the reading, the officer asked each defendant if he understood, and each defendant nodded. The officer then asked questions about the crimes, and Lopez-Cardona and Mendez each answered his questions.

The officer testified that Lopez-Cardona's and Mendez's nods when he asked if they understood, as well as their apparent willingness to answer his questions, indicated to him that they did in fact understand their rights under *Miranda*.[5] The officer also testified that he did not show Lopez-Cardona or Mendez the advisement of rights form that was printed in Spanish; he did not ask them to sign the form; and he did not read to them the last paragraph just above the signature line on the form, which he translated into English during his hearing testimony as follows: "I

---

[5] As explained more below, the defendants disputed this point, arguing that they did not understand or waive their rights.

have read this document of my rights, and I understand. I desire to speak with you and answer your questions. I do not desire an attorney at this time. I know and understand what I am doing. No promises or threats or pressure or coercion have been used against me."

The defendants presented testimony from Yvonne Machain, a Spanish-speaking interpreter and translator, who stated that she reviewed the video recordings and transcripts of the interviews and that there were several "inaccuracies" in the officer's recitation of the rights under *Miranda* in Spanish to each defendant. First, as to his recitation in Spanish of the phrase "[a]nything you say can be used against you before a court of law," the transcripts of the recordings show that the word the officer used to represent the English word "before" (as in "before a court of law") was "antes," which, Machain testified, means "before" in the context of time (as in "prior to"). Machain testified that the correct word to express "before a court" (as in "in front of" the court) is "ante," not "antes." Second, with regard to the officer's recitation in Spanish of the

6

phrase "[i]f you want an attorney, but cannot afford one," Machain testified that the officer incorrectly used in each interview the word "contrar," which means "to oppose," rather than the word "contratar," which means "to hire."[6] Finally, with respect to the officer's recitation in Spanish of the phrase, "[y]ou may exercise these rights at any time," the transcripts of the recordings show that he used in each interview the word "ejercitar," and Machain testified that word means "physical exercise."[7] Machain also testified that the officer "mumbled" and "sounded winded" when he recited the *Miranda* warnings in Spanish to each defendant, and that "he rushed through the reading." On cross-examination, Machain testified that depending on a listener's educational background, the listener would be able to decipher what the officer meant when he

---

[6] The transcripts of the interview recordings show that the officer used the word "contrar" when reciting the rights under *Miranda* to Lopez-Cardona, but that he used "contratar" when speaking to Mendez. Machain testified, however, that each alleged inaccuracy she identified existed in each recording she reviewed, even if the transcripts did not necessarily reflect those inaccuracies.

[7] Machain did not say, and was not asked, what word the officer should have used in place of "ejercitar."

used the words "antes" (instead of "ante") and "contrar" (instead of "contratar"), given the context.[8]

At the end of the hearing, the trial court granted Lopez-Cardona's and Mendez's motions to suppress. Noting that Machain testified that the officer "was fast[-]speaking and possibly mumbling" when he read the *Miranda* warnings, the trial court found that the officer "was very fast[-]speaking . . . while he was giving testimony." The court then stated, without further explanation, that there was "evidence there may have been some mistakes in the translation." The trial court also found that neither Lopez-Cardona nor Mendez "answered audibly" when the officer asked if they understood the *Miranda* warnings; that Lopez-Cardona "slightly gave a nod after the one word understood"; and that Mendez "nodded throughout the reading of the *Miranda* [warnings], so his nod immediately after the word understood . . . had no meaning." The court then said that "neither one of these

---

[8] Machain was not asked whether a listener would be able to decipher what the officer meant when he used the word "ejercitar."

[d]efendants w[as] asked if they waive[d] their rights.  Neither one of these [d]efendants w[as] asked if they want to talk to the police, and therefore, I find that they did not knowingly and voluntarily waive their *Miranda* rights and that they did not—there is not a preponderance of the evidence that they understood."

The trial court later issued separate, written orders granting Lopez-Cardona's and Mendez's motions to suppress.  Each said: "Having heard and considered the [d]efendant's motion, evidence and argument of counsel and all applicable law, the [c]ourt finds the State failed to meet its burden of proving the defendant understood his *Miranda* rights and knowingly, voluntarily[,] and intelligently waived those rights before giving a statement."  The State filed a timely notice of appeal under OCGA § 5-7-1 (a) (4), contending that the trial court erred by suppressing Lopez-Cardona's and Mendez's statements.

2. (a)  We begin with a review of the legal principles that apply in this case.  In *Miranda*, the United States Supreme Court interpreted the Fifth Amendment to the United States Constitution

9

and set forth the now well-established rule that a defendant who is in custody and subject to interrogation "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479. To use a defendant's custodial statements in its case-in-chief, the State must prove by a preponderance of the evidence that the defendant was advised of these rights and that he voluntarily, knowingly, and intelligently waived them. See, e.g., *Hinkson v. State*, 310 Ga. 388, 400 (850 SE2d 41) (2020); *Pena v. State*, 297 Ga. 418, 422 (774 SE2d 652) (2015).

"The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382-383 (130 SCt 2250, 176

LE2d 1098) (2010) (citation and punctuation omitted). See also, e.g., *Hinkson*, 310 Ga. at 400 ("'Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'") (citation omitted). Lopez-Cardona and Mendez did not argue in their motions to suppress or at the hearing on the motions that any waiver of their rights was not voluntary. Rather, the issue presented here centers on whether the officer who read the *Miranda* warnings adequately advised Lopez-Cardona and Mendez of their rights, such that they understood them, and whether they then knowingly and intelligently waived those rights.

To that end, we have explained that a recitation of the *Miranda* warnings must be "intelligible," because a defendant must understand his rights in order to knowingly and intelligently waive them. *Clay v. State*, 290 Ga. 822, 826 (725 SE2d 260) (2012). And although "no talismanic incantation [is] required" to satisfy the strictures of *Miranda*, an officer's recitation of the warnings must

11

convey to a defendant each of the rights required by that judicial decision. *California v. Prysock*, 453 U.S. 355, 359-361 (101 SCt 2806, 69 LE2d 696) (1981). See also *Benton v. State*, 302 Ga. 570, 574-575 (807 SE2d 450) (2017) (concluding that the trial court erred by failing to suppress statements that a defendant made during interrogation, because the totality of the circumstances showed that the officer gave the defendant an incomplete explanation of the *Miranda* warnings, which failed to include three of the four warnings).

As to the form of the waiver itself, it is well settled that a relinquishment of the rights pursuant to *Miranda* need not be express. See, e.g., *Berghuis*, 560 U.S. at 384 ("The prosecution . . . does not need to show that a waiver of *Miranda* rights was express."); *North Carolina v. Butler*, 441 U.S. 369, 373 (99 SCt 1755, 60 LE2d 286) (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."). Instead, waiver may

12

be "implied from all the circumstances," including from "'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Berghuis*, 560 U.S. at 384 (quoting *Butler*, 441 U.S. at 373). See also *Huffman v. State*, 311 Ga. 891, 895 (860 SE2d 721) (2021).

In assessing whether a defendant voluntarily, knowingly, and intelligently waived his rights under *Miranda,* a trial court must consider the totality of the circumstances surrounding the interrogation. See, e.g., *Hinkson*, 310 Ga. at 400. And in reviewing a trial court's order on a motion to suppress, we have explained that when the facts material to the motion are disputed—as some of them are in this case—it generally is for the trial court, not this Court, to resolve those disputes and determine the material facts. See, e.g., *Hughes v. State*, 296 Ga. 744, 746 (770 SE2d 636) (2015). A trial court is not required to make express findings of fact in ruling on a motion to suppress, see *Jones v. State*, 314 Ga. 605, 609 (878 SE2d 505) (2022), but when it does make such findings, we generally accept them unless they are clearly erroneous; we construe the

13

record in the light most favorable to the trial court's judgment; and we generally limit our consideration of the disputed facts to those expressly found by the trial court. See, e.g., *Hughes*, 296 Ga. at 746.[9]

"Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts." *Hughes*, 296 Ga. at 750. However, "[i]f the trial court has made express findings of fact, but not with sufficient detail to permit meaningful appellate review, an appellate court may remand for further findings." Id. at 746 n.6.

---

[9] Citing *Licata v. State*, 305 Ga. 498 (826 SE2d 94) (2019), the State contends that we should review de novo the trial court's factual determinations in this case because, the State says, "the controlling facts are not in dispute." Id. at 501 n.2. But the parties vigorously dispute factual issues like the speed, clarity, and accuracy of the *Miranda* warnings that were given in Spanish to Lopez-Cardona and Mendez; there was conflicting evidence about these issues presented at the hearing on the motion to suppress; and that evidence is relevant to the ultimate legal question of whether Lopez-Cardona's and Mendez's waivers were knowing and intelligent. To the extent a trial court makes factual and credibility findings about such disputed issues, those findings are reviewed for clear error. See, e.g., *State v. Abbott*, 303 Ga. 297, 299 (812 SE2d 225) (2018); *Clay*, 290 Ga. at 826 n.1. Compare *State v. Franklin*, 318 Ga. 39, 40 n.1 (897 SE2d 432) (2024).

14

(b) We now turn to the findings of fact that the trial court made in suppressing Lopez-Cardona's and Mendez's custodial statements. As we mentioned above, the trial court's written orders granting the motions said only that "the State failed to meet its burden of proving" that the defendants "understood [their] *Miranda* rights and knowingly, voluntarily[,] and intelligently waived those rights before giving a statement." But when the trial court pronounced that ruling at the end of the hearing on the motions, the court made additional (though limited) factual findings as part of its analysis of the totality of the circumstances—and the parties do not dispute that the court's orders were based on those findings.[10] Accordingly, we review those findings for clear error. See *Hughes*, 296 Ga. at 746. See also *Norton v. State*, 293 Ga. 332, 335 n.4 (745 SE2d 630) (2013) (construing the trial court's written order together with its oral pronouncement in determining that the court applied the proper

---

[10] We note, however, that if there had been any discrepancies between the trial court's oral pronouncement and its written ruling, such discrepancies would be resolved in favor of the written judgment. See, e.g., *Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 772 (815 SE2d 70) (2018).

15

standard in denying the defendant's motion to suppress); *Sherod v. State*, 334 Ga. App. 314, 315 (779 SE2d 94) (2015) (explaining that the trial court made no written findings of fact in its order denying the defendant's motion to suppress but that the court orally announced its factual findings at the conclusion of the hearing on the motion, and determining that review of those oral findings under a clearly-erroneous standard was appropriate). However, as we explain more below, even after examining the trial court's limited findings, we cannot determine whether the trial court erred by granting the motions to suppress, because its factual findings are incomplete.

(i) With respect to whether Lopez-Cardona and Mendez were adequately apprised of their rights under *Miranda*, the trial court first recounted Machain's testimony that the officer who recited the rights in Spanish "was fast[-]speaking and possibly mumbling" when he read the rights, and the court then found that the officer "was very fast[-]speaking" when he testified at the hearing on the motions to suppress. However, the court made no express findings

16

about whether the officer's recitation of the warnings was so fast that it was unintelligible. Although the trial court did reference Machain's testimony about the officer's "fast" and "mumbl[ed]" reading of the rights, it did not expressly credit that testimony. And although the trial court found that the officer spoke "very fast" when he testified at the hearing, that observation does not necessarily bear on how the officer spoke when he read the rights to the defendants. In the same vein, the court did not determine whether the officer's pace in reading the rights was so fast or his "possibl[e] mumbling" so inarticulate that the defendants did not understand him. Compare *Clay*, 290 Ga. at 825-826 (holding that the trial court did not err in concluding that the defendant did not knowingly and intelligently waive his rights under *Miranda*, because the evidence supported the court's findings that an investigator read the rights "in such a super-speed manner that the warnings likely could not have been identified as anything more than gibberish" to the defendant, who was experiencing the effects of a drug-induced coma) (punctuation omitted) with *Huffman*, 311 Ga. at 894 (explaining

17

that a detective's reading of the *Miranda* warnings "was not so rushed as to be unintelligible absent familiarity with *Miranda*").

Second, the trial court mentioned "evidence [that] there may have been some mistakes in the translation." Yet the court made no findings about whether such mistakes were actually made, or whether they were material such that they likely affected Lopez-Cardona's and Mendez's understanding of their rights. Notably, conflicting evidence on this point was presented at the hearing. On one hand, Machain testified about three alleged "inaccuracies" in the officer's recitation of the rights: his use of the word "antes" (meaning "prior to") rather than "ante" (meaning "in front of") to explain that anything the defendants said during their interviews could be used against them "before a court"; his use of the word "contrar" (meaning "to oppose") rather than "contratar" (meaning "to hire") to explain that if the defendants could not afford to hire an attorney, one would be appointed; and his use of the word "ejercitar" (meaning "physical exercise") to explain that the defendants could exercise their legal rights at any time. But the trial court did not expressly credit or

18

discredit Machain's testimony about inaccuracies in the translation or address whether any or all of the purported inaccuracies rendered the officer's reading of the rights unintelligible or incorrect, such that the defendants were not adequately advised of their rights under *Miranda*. On the other hand, Machain also testified that a listener would likely be able to decipher the officer's meaning as to the first two phrases, when heard in context, and did not opine further on the third phrase. The trial court did not expressly credit or discredit that testimony, either.

As we discussed above, an officer is not required to give the warnings set forth in *Miranda* in the exact form described in that judicial decision, but must convey to the defendant the substance of each of the four required warnings. See *Prysock*, 453 U.S. at 359-361; *Benton*, 302 Ga. at 574-575. In this respect, we have held that the State may carry its burden of proving that a defendant was adequately advised of his rights pursuant to *Miranda* even where there is evidence that there were minor errors in a translation of the rights, so long as the rights were effectively conveyed. See *Pena*, 297

19

Ga. at 422 (rejecting the defendant's claim that the Spanish version of the *Miranda* warnings he was given did not adequately inform him of his rights, where the evidence at the hearing on the motion to suppress showed that a detective informed the defendant of his rights but mispronounced the Spanish word for "'interrogation'" and used a "'made up word'" for "'name'" in explaining that the defendant could have an attorney "'named'" for him, and an interpreter testified at the hearing that she was able to interpret the detective's statements based on context); *Delacruz v. State*, 280 Ga. 392, 394-395 (627 SE2d 579) (2006) (rejecting the defendant's claim that the Spanish version of the *Miranda* warnings given to her was incomplete and upholding the trial court's determination that she knowingly waived her rights, noting that she pointed to no specific error in the translation and that "the Spanish translation of the *Miranda* form . . . clearly expressed the required concepts; any deviation was at most minor and inconsequential"). Evidence that an officer's translation of the required warnings rendered the warnings incomplete or incorrect, however, could support a

conclusion that the defendant was not sufficiently informed of each of his rights. Cf. *Benton*, 302 Ga. at 575.

Applying these principles to just one of the alleged inaccuracies Machain testified about shows why factual and credibility findings on such points are critical to the legal analysis *Miranda* requires: Machain's testimony that the officer's translation informed the defendants that anything they said during their interviews could be used against them "*prior to* a court of law" could, for example, authorize a finding that the defendants were not adequately advised that anything they said could be used against them *during* court proceedings. See *Benton*, 302 Ga. at 575 (explaining that "an incomplete *Miranda* warning 'is one instance in which halfway is not close enough'") (citation omitted). On the other hand, if the trial court credited Machain's testimony about an average Spanish-speaker's ability to understand the import of the officer's statement in context, such a finding could support a conclusion that the defendants were sufficiently apprised that what they said during their interviews could be used against them in court, and there

21

would be no violation of *Miranda.*

In sum, because the trial court cited evidence that the officer "was fast[-]speaking and possibly mumbling" when he read the *Miranda* warnings and evidence that there may have been mistakes in his translation of the warnings, but made no specific findings about whether the officer's reading was so fast, mumbled, or inaccurate that Lopez-Cardona and Mendez were not adequately advised of their rights, we cannot determine whether the court's conclusion that the State had not shown that the defendants understood their rights was correct.

(ii) We next turn to the trial court's factual findings about the nature of the defendants' alleged waivers. Specifically, at the end of the hearing on the motions to suppress, the court found that after the officer read the *Miranda* warnings and asked Lopez-Cardona and Mendez if they understood their rights, they did not "answer[] audibly"; Lopez-Cardona "slightly gave a nod"; Mendez also nodded, but his nod "had no meaning" because he "nodded throughout the reading" of the warnings; and neither defendant was asked if he

22

waived his rights or wanted to talk to the officer.

As discussed above, the United States Supreme Court made clear in *Berghuis v. Thompkins* that the State is not required to prove that a defendant's waiver of his rights under *Miranda* was express. See 560 U.S. at 384. In *Berghuis*, a police officer read the defendant the *Miranda* warnings, but the defendant declined to sign a form acknowledging that he understood the warnings, and there was "conflicting evidence" about whether the defendant "verbally confirmed that he understood the rights listed on the form." Id. at 375. The officer questioned the defendant, who was "'[l]argely' silent" until, near the end of the interview, he made an incriminating statement in response to one of the officer's questions. Id. at 375-376.

The United States Supreme Court rejected the defendant's claim that he had not waived his right to remain silent, explaining that "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to

23

remain silent." Id. at 384. The Court held that the evidence—which included evidence that the defendant was shown a written copy of the warnings and was given time to read them, the officer determined that the defendant could read, and the defendant read one of the warnings aloud—showed that the defendant understood his rights, and his answer to the officer's question was a "'course of conduct indicating waiver,'" such that he knowingly and voluntarily waived his right to remain silent. Id. at 385-386 (quoting *Butler*, 441 U.S. at 373). The Court also rejected the defendant's argument that the officer was not allowed to question him without first obtaining a waiver of the rights pursuant to *Miranda*, because a rule requiring waiver at the outset of police questioning would be inconsistent with the Court's holding in *North Carolina v. Butler* that "courts can infer a waiver of *Miranda* rights 'from the actions and words of the person interrogated.'" Id. at 387 (quoting *Butler*, 441 U.S. at 373).

In accordance with the holdings in *Berghuis* and *Butler*, this Court has held that a waiver of the rights under *Miranda* was

24

voluntary, knowing, and intelligent where the defendant was adequately apprised of the rights, understood them, and then "freely made his statements without invoking his right to remain silent and without requesting an attorney." *Huffman*, 311 Ga. at 895 (upholding the trial court's denial of a motion to suppress where the defendant did not sign a waiver of his rights under *Miranda*, the officer who read the rights did not ask for a verbal waiver of rights or a verbal acknowledgement that the defendant understood the rights, the evidence authorized the trial court to conclude that the defendant understood his rights, and the defendant implicitly waived his rights by responding to the officer's questions). See also, e.g., *Kidd v. State*, 304 Ga. 543, 546 (820 SE2d 46) (2018) (explaining that "a written waiver is not necessary where a suspect is orally advised of his or her rights and subsequently waives those rights through his or her responses"); *Sosniak v. State*, 287 Ga. 279, 282 (695 SE2d 604) (2010) (holding that the trial court did not err in ruling that the defendant waived his rights pursuant to *Miranda*, where a detective properly advised him of his rights, asked if he

25

understood the rights and if they were "still good to talk," and the defendant nodded affirmatively), disapproved on other grounds by *Budhani v. State*, 306 Ga. 315 (830 SE2d 195) (2019).

At the hearing on the motions to suppress in this case, the prosecutor cited *Berghuis* and argued that Lopez-Cardona and Mendez implicitly waived their rights under *Miranda*. The trial court, in pronouncing its ruling, determined that *Berghuis* was "not on point," without explanation, and then emphasized evidence that had been presented that would support a finding of no *express* waiver—such as evidence showing that the defendants did not verbally answer, and instead nodded in response, when the officer asked if they understood the *Miranda* warnings, and evidence that the officer did not expressly ask the defendants if they waived their rights before he began questioning them. The trial court's rejection of *Berghuis* and emphasis on evidence in the record showing that the defendants did not expressly waive their rights under *Miranda* suggests that the court concluded that an officer must obtain an express waiver of the *Miranda* warnings before questioning a

26

defendant. Any such ruling, however, constituted an error of law: an officer is not required to obtain an express waiver of rights before commencing questioning, and a defendant may implicitly waive his rights "'through [his] silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Berghuis*, 560 U.S. at 384, 387-388 (quoting *Butler*, 441 US at 373).

Because the trial court incorrectly determined that *Berghuis* was "not on point," the court made no findings about whether there was evidence in the record showing whether the defendants implicitly waived their rights—such as whether the defendants' course of conduct indicated an implicit waiver, including whether their silence or their understanding of their rights (or lack thereof) affected the assessment of implicit waiver. See *Berghuis*, 560 U.S. at 385-386 (explaining that "[t]here was more than enough evidence in the record to conclude that [the defendant] understood his *Miranda* rights" and that his course of conduct in "giv[ing] sporadic answers to questions throughout the interrogation" and in making an incriminating statement about three hours after receiving the

27

*Miranda* warnings (rather than saying nothing or unambiguously invoking his rights) was "sufficient to show a course of conduct indicating waiver"). As to whether the defendants understood their rights, we explained above in Division 2 (b) (i) that the trial court made no specific findings about whether the officer's reading of the *Miranda* warnings was so fast, mumbled, or inaccurate that Lopez-Cardona and Mendez were not adequately advised of their rights, such that they did not "kn[o]w what [they] gave up when [they] spoke." Id. at 385. And as to Lopez-Cardona's and Mendez's course of conduct during their interviews, the trial court noted only the defendants' failure to verbally answer when the officer asked if they understood the *Miranda* warnings, Lopez-Cardona's "slight[ ]" nod, and Mendez's nods "throughout the reading," without assessing whether this conduct and other conduct by Lopez-Cardona and Mendez during the interviews—including, for example, their subsequent answers to the officer's questions—"was sufficient to show a course of conduct indicating waiver." Id. at 386. Because the trial court rejected *Berghuis* and made incomplete findings about

28

the defendants' understanding of their rights and course of conduct during the interviews, we cannot meaningfully review the trial court's ruling about the form of the alleged waivers.

(iii) In all, under the circumstances of this case, the determination of whether the officer sufficiently advised Lopez-Cardona and Mendez of the *Miranda* warnings, such that they understood their rights, and whether they then implicitly waived those rights, necessarily rests on factual and credibility findings that must be made by the trial court, which had the opportunity to observe the live testimony from the officer and Machain, as well as the video recordings and transcripts of the interviews. We therefore vacate the trial court's orders suppressing Lopez-Cardona's and Mendez's statements and remand the case to that court for it to make appropriate factual findings consistent with the legal framework set out in this opinion. See *Hughes*, 296 Ga. at 746 n.6. See also *Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017); *Welbon v. State*, 301 Ga. 106, 110-111 (799 SE2d 793) (2017). As discussed above, we affirm the trial court's suppression order with

29

respect to Suruy.

*Judgments affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*