**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 12, 2025**

# In the Court of Appeals of Georgia

A25A0391. THE STATE v. CRAIG.

GOBEIL, Judge.

The State appeals from the Superior Court of Cherokee County's grant of B. Jay Craig's motion to suppress evidence seized from his vehicle during a traffic stop, arguing that the court erred in granting the motion "despite the clear video evidence" that Craig committed a traffic violation. For the reasons that follow, we affirm.

When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts. First, an appellate court generally must accept those findings unless they are clearly erroneous. Second, an appellate court must construe the

evidentiary record in the light most favorable to the factual findings and judgment of the trial court. And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.

*Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015) (citations, punctuation and footnotes omitted). Nevertheless, the trial court's "application of the law to undisputed facts is subject to de novo review." *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011).

So viewed, the record shows that on February 11, 2023, Officer Tyler Berg with the Cherokee County Sheriff's Office was on routine traffic patrol. He initiated a traffic stop after he observed a vehicle fail to come to a complete stop at a red light before turning right. The driver of the vehicle, later identified as Craig, was subsequently arrested and later charged by accusation with two counts of DUI (less safe), DUI, driving with a suspended license, and disregarding a traffic control device.

Craig filed a motion to suppress all evidence discovered as a result of the traffic stop, arguing that his detention was not based on reasonable articulable suspicion of criminal conduct. At the hearing on Craig's motion, the State played a sixty second clip from the dash cam video in Officer Berg's patrol car that showed Craig's car at

the stop light and then turn right.[1] The trial court took a short recess so that the judge could view the video "straight on" in his chambers. After hearing argument from both sides, the trial court granted the motion to suppress, finding that Craig's detention was not supported by reasonable articulable suspicion of criminal conduct. More specifically, "[u]pon close review of the footage," the court determined that Craig's vehicle came to a complete stop and then proceeded cautiously when he turned right.[2] Even though "[i]t wasn't a very long stop," the court found that it was a "legally

---

[1] As the State points out, Officer Berg's credibility is "not at issue" in this case because his testimony was largely to lay a foundation for the admission of the video of the stop, as opposed to his observations about the alleged traffic violation.

[2] Although the trial court's specific finding — that Craig's vehicle proceeded cautiously when he turned right — did not make its way into the written order, the court made such an express finding in the transcript of the evidentiary hearing on the matter. And the parties do not dispute that the court's order was based on those findings. See *State v. Lopez-Cardona*, 319 Ga. 222, 228 (2) (b) (903 SE2d 18) (2024) (reviewing trial court's factual findings at the hearing on motion to suppress, in addition to written order, in analysis of the totality of circumstances as to whether defendant knowingly and voluntarily waived his *Miranda* rights); *Norton v. State*, 293 Ga. 332, 335 (2) n.4 (745 SE2d 630) (2013) (construing the trial court's written order together with its oral pronouncement in determining that the court applied the proper standard in denying the defendant's motion to suppress); *Sherod v. State*, 334 Ga. App. 314, 315 (779 SE2d 94) (2015) (explaining that the trial court made no written findings of fact in its order denying the defendant's motion to suppress but that the court orally announced its factual findings at the conclusion of the hearing on the motion, and determining that review of those oral findings under a clearly-erroneous standard was appropriate).

sufficient stop" and was not a violation of OCGA § 40-6-20. As a result, the court ordered the suppression of all evidence discovered incident to and as a result of the traffic stop. The State now appeals.

"The driver of any vehicle shall obey the instructions of an official traffic-control device[.]" OCGA § 40-6-20 (a). OCGA § 40-6-21 (a) (3) in turn provides in relevant part:

> (A) Traffic, except pedestrians, facing a steady CIRCULAR RED signal alone shall stop at a clearly marked stop line or, if there is no stop line, before entering the crosswalk on the near side of the intersection or, if there is no crosswalk, before entering the intersection, and shall remain standing until an indication to proceed is shown, except as provided in subparagraphs (B), (C), and (D) of this paragraph;

> (B) Vehicular traffic facing a steady CIRCULAR RED signal may cautiously enter the intersection to make a right turn after stopping as provided in subparagraph (A) of this paragraph.

In a single enumeration of error, the State argues that the trial court's factual findings are not supported by the video evidence, which shows that Craig did not bring his vehicle to a complete stop, nor did he cautiously enter the intersection to make a right turn.

4

In this case, we disagree with the State that the dash cam video conclusively establishes that the trial court's finding — that Craig's car did come to a complete stop at the traffic light before cautiously turning right — was clearly erroneous. We have independently reviewed the recording and have no basis to disturb the trial court's finding that Craig came to a legally sufficient stop and then proceeded cautiously when he turned right as outlined in OCGA §§ 40-6-20 (a), 40-6-21 (a) (3). When, as here, it is not undisputably clear that Craig violated OCGA § 40-6-20 by disregarding a traffic control device, "we must review this evidence in the light most favorable to the trial court's findings and judgment." *State v. Dykes*, 345 Ga. App. 721, 723 (1) (815 SE2d 106) (2018) (citation and punctuation omitted). Thus, we defer to the trial court's finding that Craig did not commit the traffic violation that was the basis for the traffic stop. See *Dougherty v. State*, 341 Ga. App. 120, 123 n. 1 (799 SE2d 257) (2017) ("We conduct a de novo review of factual findings when the controlling facts are *clearly and completely* discernible from a video recording. But where, as here, some of the controlling facts are not fully captured in the recording, we defer to the trial court's findings regarding those facts.") (citations and punctuation omitted; emphasis supplied).

And for a traffic stop to be valid, "an officer must identify specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity." *Jones v. State*, 291 Ga. 35, 38 (2) (727 SE2d 456) (2012). Thus, because the trial court's conclusion that Craig did not commit a traffic violation was not clearly erroneous, the officer lacked reasonable suspicion to stop Craig, and the court properly granted his motion to suppress. See id. (holding that an officer lacked reasonable suspicion to initiate a traffic stop when there was no evidence that the defendant violated a traffic law or drove in an unsafe manner); *State v. Mincher*, 313 Ga. App. 875, 877-878 (723 SE2d 300) (2012) (affirming the trial court's grant of a motion to suppress evidence obtained as a result of a traffic stop because the conduct that was alleged as the basis for the stop was not illegal and there was no objective basis to suspect that the defendant was or was about to be engaged in any criminal activity).

*Judgment affirmed. Rickman, P. J., and Davis, J., concur fully and specially.*

# In the Court of Appeals of Georgia

A25A0391. THE STATE v. CRAIG.

RICKMAN, Presiding Judge, concurring fully and specially.

I agree fully with the majority, that the trial court properly granted Craig's motion to suppress. I write separately, however because I see conflict, and the potential for confusion, with regard to how we should treat statements made by the trial court from the bench following evidentiary hearings, as compared to the factual findings set forth in its written orders.

As noted by the majority, the standard for reviewing the trial court's factual findings following a motion to suppress is discussed at length in *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). "When the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and

determine the material facts." Id. "This principle is a settled one, and this Court has identified three corollaries of the principle, which limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts." Id. "First, an appellate court generally must accept those findings unless they are clearly erroneous." Id. "Second, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court." Id. "*And third, an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court.*" Id. (emphasis supplied). In connection with the third corollary, our Supreme Court recognized that "we must focus on the facts found by the trial court *in its order*, as the trial court sits as the trier of fact." (Citation and punctuation omitted; emphasis in original). Id.

Additionally, there are many cases from our Supreme Court and this Court which clearly hold that oral pronouncements are not binding and that the written order controls. See *Williams v. Williams*, 295 Ga. 113, 114 (1) (757 SE2d 859) (2014) (" An oral pronouncement of this type is not binding. It may provide insight on the intent of a later written judgment, but any discrepancy between the written judgment

and oral pronouncement is resolved in favor of the written judgment."); See *Onyeka v. State*, 374 Ga. App. 504, 508 (2) (913 SE2d 377) (2025) ("any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment") (citation and punctuation omitted); *In the Interest of J. J.*, 317 Ga. App. 462 (731 SE2d 766) (2012) ("Indeed, a trial court's oral pronouncements are not binding because, while they may provide insight on the intent of the subsequent written judgment, any discrepancy between the written judgment and oral pronouncements is resolved in favor of the written judgment.").

Accordingly, in light of *Hughes* and the broader body of case law holding that a trial court's oral pronouncement is not binding, it would seem that our review would be confined to the findings expressly set forth in the trial court's detailed written order. But, as the majority points out, our Supreme Court has referred to a trial court's oral statements from the bench as oral findings and authorized construing those oral findings with the written findings of fact. See *State v. Lopez-Cardona*, 319 Ga. 222, 228 (2) (b) (903 SE2d 18) (2024). Unlike in *Lopez-Cardona*, the written order in this case contained detailed factual findings. That distinguishing attribute, however, does not mean that we can look past our Supreme Court's directive that we can, at

times, look to what the trial court pronounces orally when conducting meaningful appellate review of a motion to suppress. It may be that such instances are restricted to those cases when there is not a detailed written order, but our Supreme Court has not explicitly said that nor have we.

Ultimately, the issue of whether it is proper to construe the trial court's oral statements from the bench together with the trial court's written order, does not impact the resolution of this case. Thus, any inconsistency between the order and the oral pronouncement is of no consequence, but I do think that in the future this conflict could become a problem in cases that do not have video evidence. When given the right opportunity, our court and ultimately the Supreme Court, should weigh in on this issue and clarify it.

I am authorized to state that Judge Davis joins this special concurrence.