**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26A0077
Marlon Christopher Jones
v.
The State

On Appeal from the Superior Court of Fayette County
No. 2022R-0136

Decided: June 2, 2026

BETHEL, Justice.

Marlon Christopher Jones was convicted of malice murder and other crimes in connection with the shooting death of Donnell Hicks.[1] On appeal, Jones argues that the trial court erred in admitting his statements to police and in denying his motion to strike a juror for cause. For the reasons below, Jones's claims fail.

1. The evidence admitted at trial showed the following. Jones's wife worked at a local pharmacy and was engaged in an

---

[1] The crimes occurred on May 4, 2022. On May 10, 2022, a Fayette County grand jury indicted Jones for malice murder (Count 1), felony murder (Count 2), and possession of a firearm during the commission of a felony (Count 3). At a jury trial from October 30–November 3, 2023, Jones was found guilty on all counts. The trial court sentenced Jones to serve life in prison without the possibility of parole on Count 1 and five years consecutive on Count 3. The remaining count was vacated by operation of law.

Jones filed a timely motion for new trial on November 17, 2023, which he later amended. Following a hearing in December 2024, the trial court entered an order denying the motion, as amended, on April 3, 2025. Jones then filed a timely notice of appeal, and this case was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

affair with Hicks, the general manager. On the day of the crimes, Jones confronted Hicks in the pharmacy parking lot and shot him repeatedly, killing him. A witness driving by the pharmacy at the time saw a man in a purple shirt shoot a gun twice, walk around in front of a car, and then repeatedly shoot a body on the ground.

After shooting Hicks, Jones called 911 and told the dispatcher that he had "just killed a man in front of [the pharmacy]," that he put the gun in the car, and that Hicks "was f***ing [his] wife." When police arrived at the scene, they arrested Jones, who was wearing a purple shirt, was still in possession of his gun, and had gunshot residue on his hands Text messages recovered from Hicks's phone established that Jones had recently confronted Hicks with his suspicions about the affair.

2. Jones first argues that the trial court erred by denying his motion to suppress his custodial statements made at the crime scene[2] because, he says, he invoked his right to remain silent and the State failed to prove that he knowingly and voluntarily waived his rights. His arguments fail.[3]

Before trial, Jones filed a motion to suppress his statements made to a police officer at the crime scene shortly after his arrest, arguing in relevant part that police officers questioned

---

[2] Jones's vague, perfunctory argument references his custodial statements made shortly after his arrest at the crime scene and during a subsequent interview at the police station. But Jones's pretrial motion to suppress related only to the statements made at the crime scene, and those were the only statements introduced into evidence at trial. So we interpret his argument on appeal to concern only the statements made at the crime scene.

[3] Jones argues for the first time in his reply brief that his statements made at the scene were coerced and should have been suppressed on that additional basis. But "an appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *Williams v. State*, 323 Ga. 362, 369 n.7 (2026) (cleaned up).

him after he invoked his right to remain silent and without first obtaining from him a valid waiver of his rights under *Miranda*.[4] The trial court held a *Jackson-Denno*[5] hearing to consider Jones's motion to suppress. At the hearing, the State presented the testimony of the officers who interacted with Jones at the crime scene, as well as the officers' body camera footage that recorded those interactions. The officers testified in pertinent part, and their body camera footage showed as follows.

At the scene, Jones was arrested, handcuffed, and read the *Miranda* rights. The arresting officer asked Jones if he understood the rights that were read to him, to which Jones responded, "I do." The officer asked Jones if he was willing to waive his rights and submit to questioning, and Jones replied, "Not right now." The arresting officer then informed her sergeant that she read Jones the *Miranda* rights, that Jones did not wish to talk, but that they could try again later on. After some time, the sergeant went to speak with Jones, who was seated in the back of a patrol car, and she asked if he needed to use the bathroom. Jones responded affirmatively. The sergeant indicated that police would "make that happen," and then asked Jones if he wanted to tell her his "side of it, tell [her] what happened." Jones immediately responded, "Best I can say is, my wife was sleeping with [Hicks]. He's the manager of the store and whatnot." Jones then disclosed that, during a "confrontation" with his wife the previous day, he discovered that his wife "was cheating on [him] with [Hicks]." Jones claimed that he had talked with Hicks and that Hicks wanted to fight him. Jones denied fighting with Hicks and also denied that Hicks "came at [him]" in any way. Jones asserted that he drew his gun to show Hicks "the severity of [the

---

[4] *Miranda v. Arizona*, 384 US 436 (1966).
[5] *Jackson v. Denno*, 378 US 368 (1964).

3

situation]," though he also claimed that he only wanted to talk with Hicks and sought "peace" and "understanding." Jones said that he was not sure how many times he fired his weapon and was not sure he had hit Hicks until he "walked up on him."

After considering this evidence and the argument of the parties, the trial court found by a preponderance of the evidence that Jones was advised of the *Miranda* rights, that he understood the *Miranda* rights, that he voluntarily waived those rights, and that he thereafter gave his statement freely and voluntarily without hope of benefit or fear of injury. The court rejected Jones's argument that he had invoked his right to remain silent by responding, "Not right now," after the arresting officer asked if he would submit to questioning, reasoning that Jones's response was not an unequivocal invocation of that right. On that basis, the trial court denied Jones's motion to suppress, and his statement was subsequently introduced into evidence at trial.

As we have said before, "[p]ursuant to the United States Supreme Court's decision in *Miranda*, a defendant who is in custody must be warned prior to any questioning that he has certain rights, including the right to remain silent and the right to the presence of an attorney." *State v. Lee*, __ Ga. __ (2026), S25A1087, slip op. at 6 (Ga. Mar. 3, 2026) (quotation marks omitted). "*Miranda* outlines the procedures to be followed once warnings have been given, making clear that once warnings are given and one of the rights referenced therein is invoked, police must honor that invocation." *Jenkins v. State*, 317 Ga. 585, 594 (2023).

"To use a defendant's custodial statements in its case-in-chief, the State must prove by a preponderance of the evidence that the defendant was advised of [the *Miranda*] rights and that he voluntarily, knowingly, and intelligently waived them." *State*

4

*v. Lopez-Cardona*, 319 Ga. 222, 226 (2024). When this Court reviews a trial court's ruling on a motion to suppress, we generally "review a trial court's factual findings and credibility determinations for clear error and apply the law de novo." *Sinkfield v. State*, 318 Ga. 531, 540 (2024).

In cases where some or all of the material facts are undisputed, we properly may take notice of the undisputed facts – even if the trial court did not – without interfering with the prerogative of the trial court to resolve disputes of material fact. Such undisputed facts include, among other things, those which definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility. Audio or video evidence may match that description.

*Dickey v. State*, ___ Ga. ____ (2026), S26A0046, slip op. at *2 (Ga. May 5, 2026) (cleaned up).

In advancing this claim on appeal, Jones makes two arguments that his custodial statements at the crime scene were inadmissible, both focused on his initial response of "[n]ot right now" to the arresting officer's question about whether he would submit to questioning. First, he asserts that his response of "[n]ot right now" constituted an invocation of his right to remain silent. And second, he argues that "his only words on the record about his understanding of his rights" were "[n]ot right now" and, as such, the State failed to prove that he knowingly and voluntarily waived his rights before submitting to questioning. Neither argument is persuasive.

(a) We turn first to Jones's argument that his initial response to the arresting officer constituted an invocation of the right to remain silent. "We have explained that police must

scrupulously honor a suspect's right to remain silent if the person clearly and unambiguously states that he wants to end a custodial interrogation." *Locklear v. State*, 317 Ga. 115, 120 (2023) (quotation marks omitted).

[A] suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent. If the statement is ambiguous or equivocal, then the police have no duty to clarify the suspect's intent, and they may proceed with the interrogation.

*Perez v. State*, 283 Ga. 196, 198 (2008) (quotation marks omitted). And "if a defendant equivocates in asserting the right, a police officer is under no obligation to clarify or to stop questioning." *Locklear*, 317 Ga. at 120 (quotation marks omitted).

Viewed in context, the record here supports the trial court's finding that Jones's response of "[n]ot right now" did not articulate his desire to cut off questioning "with sufficient clarity" such that a reasonable police officer would have understood the statement "to be an assertion of the right to remain silent." *Perez*, 283 Ga. at 200 (quotation marks omitted). Rather, a reasonable police officer could have interpreted that statement to mean only that Jones did not want to answer questions at that moment in time, "not that he did not want to speak to police at all." *Locklear*, 317 Ga. at 120 (appellant's statement "that's as far as I'm going with it," considered in context, was not an unambiguous and unequivocal invocation of the right to remain silent). Indeed, under the circumstances in which Jones made the statement— moments after his arrest and mere minutes after shooting and killing Hicks—a reasonable officer could have understood Jones's conditional statement to be temporally qualified and to mean that

he might speak with officers at a future time. See *Young v. State*, 309 Ga. 529, 536 (2020) (Although the first half of the statement — "I'm done talking to you" — might appear unequivocal in isolation, it was immediately followed by a conditional statement that rendered the whole statement equivocal.); *Cheley v. State*, 299 Ga. 88, 91 (2016) (considered in context, a reasonable officer would have understood appellant's statement that he was "completely finished" to mean "only that [appellant] had lost patience with the repeated and continued questions" on a particular subject); *Weaver v. State*, 288 Ga. 540, 544 (2011) (appellant's statement, "I can't talk right now," was reasonably interpreted under the circumstances to mean that he was temporarily overcome with emotion, not that he was unequivocally invoking his right to remain silent, and statement "I don't want to say nothing" was reasonably understood as a part of the "give-and-take" of interrogation, rather than an invocation of the right to remain silent); *Barnes v. State*, 287 Ga. 423, 425 (2010) (appellant's statement "'if you're not going to talk real talk, then we shouldn't talk' was not an unequivocal and unambiguous invocation of his right to remain silent" because "it was conditional and ambiguous, and lacked sufficient clarity to lead a reasonable police officer to understand that [appellant] was exercising his right to remain silent"). Because Jones's response was not so clear as to lead a reasonable police officer to understand that he was unequivocally and unambiguously asserting his right to remain silent, the officers were under no duty to cease questioning him.

(b) Jones's argument that the State failed to prove that he knowingly and voluntarily waived his rights is likewise unavailing. In asserting this claim, Jones centers his argument on the form of the waiver and emphasizes the absence of evidence that he expressly waived his rights. But "it is well settled that a

7

relinquishment of the rights pursuant to *Miranda* need not be express." *Lopez-Cardona*, 319 Ga. at 227. See also *Berghuis v. Thompson*, 560 US 370, 384, 385 (2010) (noting that "[t]he prosecution … does not need to show that a waiver of *Miranda* rights was express" and that *Miranda* "does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights"). Instead, the waiver may be implicit, as determined by looking to "all the circumstances," including "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver." *Lopez-Cardona*, 319 Ga. at 227 (quotation marks omitted). In short, "[a]s a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis*, 560 US at 385. Such is the case here.

The absence of an express waiver of the *Miranda* rights, either verbally or in writing, does not preclude a finding that Jones in fact knowingly and voluntarily waived those rights. See *Huffman v. State*, 311 Ga. 891, 895 (2021) ("a written waiver is not necessary where a suspect is orally advised of his or her rights and subsequently waives those rights through his or her responses" (quotation marks omitted)). The trial court could conclude from the officers' testimony and its own assessment of the body camera footage—which accords with ours—that Jones acknowledged that he understood the *Miranda* rights and waived them when he freely responded to subsequent questioning without invoking those rights. See *Huffman*, 311 Ga. at 895 (affirming denial of motion to suppress where appellant did not sign a waiver of rights under *Miranda*, the officer who read the rights did not ask for a verbal waiver or verbal acknowledgment that appellant understood the rights, the evidence authorized the

8

trial court to conclude that appellant understood his rights, and appellant implicitly waived his rights by responding to the officer's questions). See also *Berghuis*, 560 at 384 ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent."). Accordingly, the trial court did not err by denying Jones's motion to suppress his custodial statements on these bases, and this claim fails.

2. In his remaining claim of error, Jones argues that the trial court erred in denying his motion to strike a juror for cause, which was based on the juror's indication that the evidence made her squeamish and uncomfortable and that she would have a difficult time viewing the evidence.[6] Following the denial of his motion, Jones used a peremptory strike to remove the juror. On appeal, Jones asserts that he was harmed because he was forced to use "a valuable strike to get the ineligible juror out of the panel." Even assuming the trial court erred, however, Jones has failed to show the requisite harm.

"In assessing harm arising from a trial court's erroneous refusal to excuse a prospective juror, at issue is whether any unqualified juror was seated as the ultimate result of errors with respect to jurors challenged for cause." *Carson v. State*, 308 Ga. 761, 772 (2020) (quotation marks omitted). See also *Willis v. State*, 304 Ga. 686, 707 (2018) ("[A] defendant is not presumptively harmed by a trial court's erroneous failure to excuse a prospective juror for cause simply because the defendant

---

[6] Jones argues in his reply brief that additional jurors also should have been stricken for cause. But, as we stated in footnote 2 above, we do not consider arguments raised for the first time in a reply brief. See *Williams*, 323 Ga. at 369 n.7.

subsequently elected to remove that juror through the use of a peremptory strike."). Jones has not shown, or even alleged, that an unqualified juror was seated, and thus he has failed to show reversible error. See *Carson*, 308 Ga. at 772. Accordingly, his claim of error fails.

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*